United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Sally Williams, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 23-22340-Civ-Scola |
| | ) **In Admiralty** |
| MSC Cruises, S.A., Defendant. | ) |

### Order Denying Motion to Dismiss

This matter is before the Court upon the Defendant, MSC Cruises, S.A.'s ("MSC") motion to dismiss the Plaintiff Sally Williams's ("Williams") amended complaint. (Mot., ECF No. 14.) Williams has responded opposing the motion to dismiss (Resp., ECF No. 20), and MSC has replied (Reply, ECF No. 22). Having reviewed the record, the parties' briefs, and the relevant legal authorities, the Court **grants** MSC's motion to dismiss. (**Mot., ECF No. 14**.)[1]

### 1. Background[2]

This case arises from a slip and fall accident Williams had while a passenger onboard MSC's vessel, the *Seaside*. The incident occurred on May 2, 2023, between approximately 1:00 p.m. and 5:00 p.m., when Williams went to visit the *Seaside's* waterslide. (Am. Compl. ¶¶ 11, 14, ECF No. 11.) As Williams stepped down onto the area to the left of the water slide (the "subject area"), "she slipped and fell on a surface that was unreasonably wet and slippery." (*Id.* ¶ 14.) When she fell, she hit her head hard on the corner of the step she had just descended from, and, as a result, sustained various severe injuries to her head and neck. (*Id.* ¶ 15.) Williams's amended complaint includes images depicting her at the exact moment of her slip and fall. These images come from a video taken by another *Seaside* passenger who coincidently happened to be recording at the time and who does not know Williams personally. (*Id.* ¶ 10.)[3]

---

[1] The Court notes that Williams unsuccessfully attempts to proceed under the Court's diversity jurisdiction. Among other defects, Williams's claim that complete diversity exists in this matter is wholly contradicted by her allegations that both she and MSC are citizens of the state of Florida. (Am. Compl. ¶¶ 3, 5–7, ECF No. 11.) Accordingly, the Court proceeds under its admiralty jurisdiction. *See* Fed. R. Civ. P. 9(h)(1).

[2] This background is based on the allegations in Williams's amended complaint. For purposes of evaluating MSC's motion, the Court accepts Williams's factual allegations as true and construes the allegations in the light most favorable to her per Federal Rule of Civil Procedure 12(b)(6).

[3] Williams sought leave to conventionally file the video of her incident as an exhibit in support of her first amended complaint, and the Court granted her request. (*See* ECF Nos. 10, 13.)

Per Williams, at all times relevant to her accident, "the subject area was unreasonably dangerous, risk-creating, defective, improperly designed, improperly installed, and/or otherwise unsafe." (*Id.* ¶ 17.) Williams alleges that there are various reasons MSC either knew or should have known of the subject area's unreasonable slipperiness. (*Id.* ¶ 16.)

- First, she points out that, at the time of her incident, there was a yellow "CAUTION" cone located in the exact same location that she slipped. (*Id.* ¶ 16(a.).) In addition to saying "CAUTION" in large, black letters, the cone has a depiction of a stick figure person slipping. (*Id.*) The amended complaint provides images of the cone from the moment of Williams's accident. (*Id.* ¶ 10, 16(a.).)
- Second, there were small signs on the floor near the water slide stating, "CAUTION FLOOR SLIPPERY WHEN WET." (*Id.* ¶ 16(b.).) These signs were placed both on the subject area and on the area Williams stepped down from. (*Id.*) Like the yellow cone, the warning sings on the floor had depictions of a stick figure person slipping on a surface. (*Id.*) The amended complaint also provides images of one of the signs, taken by Williams's husband within a couple of hours after the incident. (*Id.*)
- Third, Williams alleges that "MSC participated in the installation and/or design of the subject area, or alternatively, MSC approved of the subject area with its design defects present after having been given an opportunity to inspect" it. (*Id.* ¶¶ 16(c.), 25–26.)
- Fourth, relevant safety standards, recommendations, and guidelines, such as those published by the American National Standards Institute (ANSI), indicate that the subject area's coefficient of friction or slip resistance fell well below the recommended figure, and a reasonable cruise line in MSC's position should have abided by these materials. (*Id.* ¶ 16(d.).)
- Fifth, Williams was informed by a crewmember that she needed to execute a waiver before going on the waterslide. (*Id.* ¶ 16(e.).) Though she ultimately neither executed nor read the waiver, Williams believes it likely contained a provision specifically addressing the tendency of the area to be wet and unusually dangerous and slippery. (*Id.*)
- Finally, Williams states that previous passengers have suffered similar incidents involving slips and falls on the *Seaside* and other ships in MSC's fleet. (*Id.* ¶ 16(f.).)

Williams contends that, though she was near the water slide and there were caution signs in the area where she fell, the conditions leading to her fall were neither open nor obvious. (*Id.* ¶ 24.) This is because she slipped and fell even though she was exercising reasonable care by "holding onto the railing very

tightly" and "slowly and carefully attempting to navigate past th[e] area[.]" (*Id.*) Thus, even if she had been aware that the area was wet, "neither she nor any reasonable passenger would have been aware of the extreme degree to which this surface was slippery[.]" (*Id.*)

Based on the foregoing allegations, Williams contends that MSC: negligently failed to inspect the subject area (Count One); negligently failed to maintain the subject area (Count Two); negligently failed to remedy the subject area (Count Three); negligently failed to warn Williams of the dangerous condition of the subject area (Count Four); and negligently designed, installed, and/or approved the subject area and its vicinity (Count Five). MSC now moves to dismiss the amended complaint, arguing, with respect to all Counts, that Williams has failed to plausibly plead MSC's actual or constructive notice of the alleged risk-creating condition and, with respect to Count Four, that Williams has failed to plausibly plead the condition was not open and obvious.

## 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

### 3. Analysis

#### A. Notice of the Risk-Creating Condition

MSC moves to dismiss all five of Williams's claims on the ground that she does not plausibly allege its notice of the subject area's dangerous condition. According to MSC, Williams's allegations as to its knowledge of the subject area's dangerousness are barebones and conclusory in nature. (Mot. 7–9, ECF No. 14.) Williams fails to allege, MSC argues, any facts concerning substantially similar incidents to the one at issue, or facts otherwise showing that the condition existed for a sufficient length of time to prompt MSC's notice. (*Id.*) The Court does not agree. In her amended complaint, Williams alleges six different methods by which MSC was put on notice of the dangerous condition of the subject area. The Court does not deem it necessary to address the sufficiency of the amended complaint's allegations with respect to each of those methods because it finds that Williams's allegations pertaining to the warning signs placed in the subject area suffice to plausibly plead MSC's notice.

To prevail on a maritime tort claim, a plaintiff must establish that "[1] the defendant had a duty of care, [2] the defendant breached that duty, [3] the breach was the actual and proximate cause of the plaintiff's injury, and [4] the plaintiff suffered harm." *See Malley v. Royal Caribbean Cruises Ltd.*, 713 F. App'x 905, 907 (11th Cir. 2017) (*citing Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1280 (11th Cir. 2015)). Regarding the second element, cruise operators owe passengers a duty of "ordinary reasonable care under the circumstances." *See Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1168 (11th Cir. 2021) (quoting *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989)). "[A]s a prerequisite to imposing liability," a plaintiff must allege that the cruise ship "had actual or constructive notice of the risk-creating condition[.]" *Id.*

Actual notice hinges on whether the defendant knew of the danger. *See Keefe*, 867 F.2d at 1322. To show constructive notice, a plaintiff must allege either that (1) "a defective condition existed for a sufficient period of time to invite corrective measures" or (2) there is evidence of "substantially similar

incidents in which conditions substantially similar to the occurrence in question must have caused the prior accident." *See Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178-79 (11th Cir. 2020) (quoting *Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 65 (2d Cir. 1988)). In all, liability "hinges on whether [the defendant] knew or should have known about the" risk-creating condition. *See Keefe*, 867 F.2d at 1322.

      Williams alleges that MSC had placed warning signs in the subject area which indicated its awareness of the area's dangerousness. Specifically, she points out that, at the time of her slip and fall, there was a yellow "CAUTION" cone located in the subject area, as well as small signs on the floor of the area stating "CAUTION FLOOR SLIPPERY WHEN WET." (Am. Compl. ¶¶ 16(a.)-(b.), ECF No. 11.) Both the cone and the signs on the floor depicted a stick figure person slipping on a surface. (*Id.*) Williams provides images of both warning methods, so the Court has been able to confirm her description of them.[4] It is reasonable to infer that MSC placed these warnings in the subject area because it knew the area could be dangerously slippery when wet. As the Eleventh Circuit has explained, "a cruise ship operator has notice of a condition—and thus a duty to warn—if a sign is posted on a ship warning about the condition." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 722 (11th Cir. 2019).

      MSC argues that Williams's allegations as to the existence of the warning signs do not suffice to plead notice because she does not demonstrate that the signs were intended to warn of the specific risk-creating condition at issue. (Mot. 9, ECF No. 14.) MSC is correct that "[n]ot all warning signs will be evidence of notice[,]" as "there must also be a connection between the warning and the danger." *Guevara*, 920 F.3d at 721. However, here, Williams has pled that connection by highlighting in her allegations that the signs were specifically intended to warn of a slippery floor. Indeed, both the cone and the signs attached to the floor depict a person slipping on a surface, and the floor signs literally state "FLOOR SLIPPERY WHEN WET." (Am. Compl. ¶ 16 (b.), ECF No. 11.) Thus, the allegations in Williams's amended complaint plausibly plead a connection between the warning signs MSC placed in the subject area and the area's unusual slipperiness. *See, e.g.*, *Guevara*, 920 F.3d at 722 ("watch your step" warning was sufficiently connected to a danger posed by a small step down); *Amy v. Carnival Corp.*, 961 F.3d 1303, 1309 (11th Cir. 2020) (testimony that Carnival warned passengers not to "climb up rails," "try to sit on them," "try to get selfies [or] lean[] over" them because "accidents can happen" and "there

---

[4] A court may generally consider documents and exhibits attached to the complaint where those attachments are undisputed in their authenticity and central to the claims. *See, e.g.*, *Arthur v. Thomas*, 674 F.3d 1257, 1265 (11th Cir. 2012) (collecting cases).

have been passengers [who] have fallen off" sufficiently connected to "falling-over danger posed by the Deck 14 guard rail").

Accordingly, for these reasons, the Court rejects MSC's argument that Williams fails to properly plead notice of the risk-creating condition at issue.

### B. Failure to Warn of the Risk-Creating Condition

MSC also moves to dismiss Williams's claim for negligent failure to warn of a dangerous condition (Count Four) on the ground that, because the hazardous condition of the subject area was open and obvious, MSC had no duty to warn Williams about it. (Mot. 10–12, ECF No. 14.) In response, Williams argues that she sufficiently pled the *danger* posed by the slipperiness of the subject area was not open and obvious, even if the condition of the area itself was. (Resp. 14–17, ECF No. 20.) The Court agrees with Williams.

The duty of care owed by a cruise operator to its passengers is ordinary reasonable care under the circumstances. *Keefe*, 867 F.2d at 1322; *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006) (Moreno, J.). This duty includes a "duty to warn of known dangers that are not open and obvious." *Frasca v. NCL (Bahamas) Ltd.*, 654 F. App'x. 949, 952 (11th Cir. 2016) (citations omitted); *see also Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1345 (S.D. Fla. 2015) (Moore, J.) (same); *Isbell*, 462 F. Supp. 2d at 1237 (same). "[F]ederal courts need not even reach the defendant's actual or constructive notice of a risk-creating condition if they determine that condition was an open and obvious danger." *Smith v. Royal Caribbean Cruises, Ltd.*, 620 F. App'x. 727, 730 (11th Cir. 2015) (citations omitted). In determining whether a dangerous condition is open and obvious, courts apply the "reasonable person" standard. *Frasca*, 654 F. App'x. at 952 (citations omitted). A plaintiff's subjective observations are irrelevant in determining whether a duty to warn existed. *Lugo*, 154 F. Supp. 3d at 1346; *Flaherty v. Royal Caribbean Cruises, Ltd.*, No. 15-22295, 2015 U.S. Dist. LEXIS 165485, 2015 WL 8227674, at *3 (S.D. Fla. Dec. 7, 2015) (Lenard, J.) (citations omitted).

Here then, the question is whether a reasonable person would have appreciated the dangerously slippery nature of the subject area near the *Seaside's* water slide. Although decided on summary judgment, the Court finds instructive the Eleventh Circuit's opinion in *Frasca v. NCL (Bah.), Ltd.*, 654 F. App'x 949 (11th Cir. 2016), a slip-and-fall case involving a slippery cruise deck. It was undisputed in *Frasca* that: "(1) the deck was well lit, (2) there was a heavy fog or mist in the air, (3) the deck was visibly wet and shiny, and (4) there were puddles of water on the deck's surface." *Id.* at 952 (cleaned up). The Eleventh Circuit concluded that under such circumstances "a reasonable person approaching the outer deck would have perceived the outdoor conditions

through the ordinary use of his senses and would have concluded based on those conditions that the deck's surface would likely be slicker than usual." *Id.* (cleaned up). Despite that, it found summary judgment was not appropriate because the plaintiff introduced an expert report opining that the deck was "*unreasonably* slippery when wet" such that "a reasonable person would have known that the deck would be slippery, but not as slippery as it actually was." *Id.* at 952-53 (emphasis in original).

      MSC argues that Williams's amended complaint establishes the open and obvious nature of the risk-creating condition because it acknowledges that the condition was created by the waterslide and an objectively reasonable person would have appreciated "that there may be *water at the exit of a water slide.*" (Reply 6–7, ECF No. 22 (emphasis in original).) However, as Williams correctly points out, the fact that a reasonable person would have expected a water slide to have water at its exit does not mean that they would have appreciated *just how* slippery the area was. *See Frasca*, 654 F. App'x at 953 ("A jury could credit the expert's testimony and conclude that the deck's visible wetness and the weather conditions would not alert a reasonable observer to the *extent* of the deck's slipperiness." (emphasis in original)); *see also Petersen v. NCL (Bah.) Ltd.*, 748 F. App'x 246, 250 (11th Cir. 2018) ("[A]lthough the wetness of the deck was open and obvious, the unreasonably slippery state of the deck may not have been open and obvious to a reasonable person."). Indeed, Williams alleges that she slipped and fell even though "she was holding onto the railing very tightly," and "slowly and carefully attempting to navigate past th[e] area[.]" (Am. Compl. ¶ 24, ECF No. 11.) Thus, Williams has provided enough factual support to plausibly plead that the nature of the danger posed by the risk-creating condition at issue here was not open and obvious.

      For these reasons, the Court also rejects MSC's argument that Williams fails to properly plead the risk-creating condition was not open and obvious.

### 4. Conclusion

      Accordingly, the Court **denies** MSC's motion to dismiss for failure to state a claim. (**Mot., ECF No. 14**.)

      **Done and ordered** in Miami, Florida, on January 5, 2024.

_____
Robert N. Scola, Jr.
United States District Judge